## O'Hara v. Graham.

(Decided May 7, 1914.)

### Appeal from Kenton Circuit Court
### (Criminal, Common Law anl Equity Division.)

1. Contracts—Damage for Breach of—Loss of Profits.—Where the evidence showed that "A" and "B" entered into a contract by which "B" agreed to furnish "A" buttermilk at a stipulated price, and further showed that "A" had customers who would take the buttermilk, "A" was entitled to recover from "B " who broke the contract, the loss of profits he sustained, which loss was the difference between the contract price, plus the cost of delivery, and the price at which he could have sold it.

2. Appeal—Harmless Error.—Where the trial court erroneously in-structed the jury that they might find damages arising from loss of business in a case in which a recovery was sought for loss of profits as well as for loss of business, and the jury in their ver-dict specified that the assessment was allowed as damages for loss of profits, the error of the court was cured by the finding of the jury.

CASTLEMAN & MURPHY for appellant.

O. M. ROGERS, R. G. WILLIAMS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This suit was brought by the appellee, Graham, against the appellant, O'Hara, to recover damages for the alleged breach of a buttermilk contract.

In the petition as amended, Graham averred that he was engaged in the business of retailing buttermilk in the cities of Cincinnati and Covington, and that he had, by the expenditure of much money, labor and attention, established a large trade in each of these cities. That he made a contract with O'Hara in 1908 by which O'Hara was to sell him the buttermilk from 37 cows. amounting approximately to 500 gallons a week, at the price of $30.00 per month. That the contract was to be-gin on January 1st, 1909, and to continue until termi-nated by either of the parties thereto giving to the other 90 days' notice of his intention to terminate the same.

He further averred that O'Hara, in violation of the contract, and without giving the notice required, refused to furnish him any buttermilk after April 1, 1911, and that when O'Hara broke the contract, he was unable to procure buttermilk from other persons to supply his cus-tomers, and as a consequence lost the profit of 7 cents a gallon that he would have made on the buttermilk, and in addition thereto lost many of his customers, and he asked damages in the sum of ten thousand dollars.

For answer O'Hara denied many of the averments of the petition, but admitted that on April 1, 1911, and thereafter, he refused to deliver any buttermilk to Gra-ham. He further admitted that he had sold Graham but-termilk for the years 1907, 1908, 1909 and 1910 at the rate of $30.00 per month, but averred that it was sold under a separate contract for each year and that each yearly contract expired on January first, and that the contract was not renewed in January, 1911, or at any time during 1910, for the year 1911.

There was a trial before a jury and a verdict in favor of Graham for $260.00, and O'Hara appeals.

A reversal is asked because the petition as amended did not state facts sufficient to support the action, because the court erred in giving and refusing instructions, and because the verdict is not sustained by sufficient evidence and is excessive.

That the petition as amended stated a good cause of action, we have no doubt. It set up the contract, the breach of it and the damages sustained in consequence thereof, resulting not only from loss of profits but loss of an established business.

Concerning the question that the evidence did not support the verdict and that the verdict was excessive, we think there was sufficient evidence to take the case to the jury on the subject of the loss of profits that Graham could have made if the contract had not been broken and to support the assessment.

The evidence of Graham is somewhat contradictory and is not entirely clear as to the time when the contract was made or the terms of it, but yet when the whole of his evidence is read and considered, there is enough in it to show the terms of the contract as relied on; that he had an established business in the retail buttermilk trade in Cincinnati and Covington; that he sold the buttermilk at an average price of 12½ cents a gallon; that it cost him, including the cost of delivery, about 7½ cents a gallon, leaving a profit of about 5 cents a gallon; that under his contract he should have received from O'Hara about 400 gallons a week; that O'Hara was to give him 90 days' notice before he quit furnishing him buttermilk; and that, although O'Hara promised him in March, 1911, that he would begin furnishing him buttermilk under the contract on April first, when April first arrived, he refused to let him have any, without giving him previous notice of his intention to break the contract; that when O'Hara refused to let him have the buttermilk to supply his trade, he could not get buttermilk any place else, although he made diligent efforts to do so, and as a result of the failure to get the buttermilk from O'Hara, he lost not only the profit he would have made, but the business of several of his best customers.

Two other witnesses testified that they heard O'Hara tell Graham in March, 1911, that he could commence getting milk on the first of April, and one or two witnesses say that after this they heard O'Hara say that he did

not intend to let Graham have any milk, as his son had started in the business and he was going to let him have all the milk he could spare.

O'Hara in his evidence denied that in March, or at any time in 1911, he agreed to let Graham have any milk. He said that his contracts with Graham were made each year and ended on the first of January each year, and that in December, 1910, he told Graham that he could not furnish him any milk in 1911.

The court instructed the jury, in substance, that if they believed from the evidence that O'Hara in 1908 entered into a contract with Graham by which O'Hara agreed to sell and deliver to Graham the buttermilk from 37 cows for the sum of $30.00 per month, which agreement might be terminated upon 90 days' notice by either party; and further believed that about the first of April 1911, O'Hara, without notice to Graham, declined to deliver any buttermilk, and. by reason thereof Graham suffered loss of profits in his business, they should find a verdict for Graham.

They were further told that if they found a verdict for Graham, they should award him such a sum of money as they believed from the evidence would fairly and reasonably represent the difference between the cost of the buttermilk and the price at which it could have been sold for a period of 90 days from April 1, 1911; and further instructed that if they believed O'Hara broke the contract, they might allow Graham, in addition to the loss of profits, such a sum as would reasonably and fairly compensate him for any damage he suffered by reason of loss of business.

The instruction presenting O'Hara's theory of the case was more favorable than the pleadings and evidence justified. Serious objection is urged by counsel for appellant to so much of the instructions as authorized the jury to allow Graham anything on account of loss to his business. We agree with counsel that. the evidence did not sufficiently show the damage to authorize an instruction on this subject, but we are further of the opinion that the instruction was not prejudicial, because the jury did not allow Graham anything for loss to his business. Their verdict reads:

"We, the jury, find for the plaintiff in the sum of $260.00, this amount estimated profits for 90 days." As the jury did not allow anything for loss of business, it is apparent that the instruction authorizing them to

award damages for loss to his business, was, in this case, a harmless error, as it was fully cured by the verdict of the jury.

The weight of the evidence shows very plainly that O'Hara did agree to furnish buttermilk to Graham in 1911, beginning April 1st, and that without any notice to him that he did not intend to comply with his contract, he refused, on April 1st and thereafter, to deliver any buttermilk to him. It is further shown, without contradiction, that Graham sustained quite a serious loss by this breach of the contract. Upon the merits of the case, the verdict of the jury is fully supported by the evidence and allowed no more than was just compensation to Graham for the loss of profits he would have made if O'Hara had performed his contract.

The judgment is affirmed.